Good morning and welcome to the Ninth Circuit. So Judge Bennett and I are very pleased to be sitting with Judge Bennett, who is sitting by designation from the District of Maryland. We really appreciate his help and are very grateful. It's always nice to sit with the Ninth Circuit. I've had the pleasure before, and I've never sat with a family member before, Judge Mark Bennett. But we'll find out if we're remitted somehow going back. So it's an honor to be here, as always. Thank you very much. I hope I can be an honorable Bennett today. So we have several cases submitted on the briefs. The first is Parra v. Garland, 22-319. That case is submitted. Then we have Fouad v. Garland, 22-845. That case is submitted. Singh v. Garland, 22-447. And the other cases we'll hear in the order in which they appear on the calendar. The first is Occam v. Garland, 22-460. Each side will have 10 minutes. May I proceed? Yes, whenever you're ready. Good morning. I'm Brent Newton. I represent Mr. — and it's Occam. I represent Mr. Occam, the petitioner. In my limited time today, I want to underscore a few points that are in my briefs, but also in BIA Judge Saenz's cogent dissenting opinion. First, the record of the asylum hearing shows — Oh, I'm sorry. Can I pause you for a second? It seems like our clock isn't working. I don't know if we can fix that. Sorry about that. That's all right. I think it's working now, so please proceed. Sure. First, the record of the asylum hearing shows an immigration judge who repeatedly did what this court has specifically condemned, which is assuming the role of a French magistrate, so to speak, or worse yet, a DHS, Department of Homeland Security, prosecutor, in cross-examining an asylum petitioner about some very sensitive matters, about being tortured by the Cameroonian military. I cited this court's decision in Morgan v. Mukasey on page 17 of my opening brief. It specifically condemns this kind of behavior by an immigration judge. Pages 194 and 95 and pages 201 through 212 of the certified administrative record show the immigration judge's extensive cross-examination about Mr. Accom concerning such matters, including matters that were not raised previously by the DHS attorney on his cross-examination. Significantly, three of the purported inconsistencies found by the immigration judge that were upheld by the BIA were based in part or completely on the immigration judge's own extensive cross-examination of Mr. Accom. First, Mr. Accom's statements that he was beaten on his legs versus beaten on his feet. Second, Mr. Accom's statement to a doctor in Cameroon that he had been hit in the chest or the trunk by Cameroonian military officers, a statement that he did not explicitly... Can I jump you to the inconsistency that's troubling me the most, which is the inconsistency about his initial statement about whether he was physically harmed or only threatened. I'm having trouble getting past that inconsistency, which seems to be exacerbated by the signatures at the bottom of the page. Can you speak to that? Absolutely. Number one, the immigration judge made, as Judge Sines in her dissent noted, made inconsistent findings about credibility. He said it could be that this border patrol officer was talking too fast. I also note he did not mention the unfamiliar accent that Mr. Accom also testified about. So there's some internal inconsistency in the immigration judge's own fighting concerning that. The other thing that needs to be understood is the DHS prosecutor turned something into an inconsistency that is not an inconsistency. Counsel, how is it not an inconsistency? He's asked about what's the name of the group threatening you, and he talks about the military, and then he's asked, did you experience any physical abuse or physical harm from this group? No. So how is that not an inconsistency? Well, if you read it carefully, Your Honor, he's not asked about the military. He's asked whether a separatist group harmed him. He never said the separatist group harmed him. That's not how I read it. But then we get to the next question. When did this group threaten you? And the answer is in May of 2019, clearly referencing the military as he goes on. So is what you're saying that when he's first asked, did you experience any physical abuse or physical harm from this group, he thought it was the separatist group, but then in the very next question, when did this group threaten you in May of 2019, in that answer he's talking about the military? Well, we don't really know, because the border patrol officer's own findings or own statements are not clear here. But is that your argument, that in the first this group, he meant the separatist group, and then in the immediately following question, when the term this group is used again, then he suddenly switches to the military? Okay, my primary argument is not that. That's a secondary argument. But you should give no weight whatsoever to this officer's report for a couple of reasons, one of which is he was not called as a witness. Number two, the immigration judge made findings that Mr. Akam did not read the four or five page thing that his signature appears at the bottom. So how do we know that? I think that IJ might have just been paraphrasing your client's testimony and saying he didn't read it. I'm not sure that IJ made a finding that he didn't read it. Well, this is one of the problems that the dissenting judge signs points out, is that these are not clear findings by the immigration judge that allow for meaningful appellate review. That was one of the very specific points. But if there's no finding, so just for a second, let's think that the IJ was paraphrasing the testimony that he didn't see it. If there's just basically no finding from the IJ one way or the other, why is it improper for the BIA to look at the signatures at the bottom of the page and say, well, he must have seen it because he signed it? Well, there's another page I point out, the JURAT, or whatever it's called. There's only one page where he signs that says, I certify I read this. The other pages do not say I read this. Didn't he testify he was never given it to see at all? He testified he did not review it. But there's a big difference between not reviewing it and being told sign here, sign here, sign here, which is clearly what happened, or at least that's certainly consistent with what happened. The thing he signed that said I read it is the one-page thing that said he had been threatened, that there had been harm. I think if I'm not mistaken, the administrative record reflects that the BIA, to your point, concluded that ACOM was able to review its context and address any errors being signed, which amounts to the BIA making a finding of fact because the immigration judge did not make that finding specifically. That's correct, and the immigration judge or the BIA cannot make a finding on a cold record where there's no evidence by the actual person who was the other person who was there, which is the Border Patrol officer. The government did not call the Border Patrol officer. Counsel, the BIA says we note that the CBP sworn statement bears the respondent's signature at the bottom of each page, which contradicts his testimony that the officer did not show him the statement. Isn't that what your client testified to, the officer did not show him the statement? And if he didn't say that, could you point to me what page in the record it is? If you give me a second, Your Honor, and I will be happy to. If I could reserve a little time for rebuttal also, I was hoping to have a couple of minutes for rebuttal, and I can have a chance to find his exact testimony and come back to that point. That would be totally fine. You have three minutes left now, so I don't know if you want to continue or if you want to stay. I do. No, I have three minutes total left. Yes. Yes. We can give you a couple extra minutes, though, if you need it, so just go ahead. I appreciate it. Okay, so the other points I want to make concern there's a word that I learned for the first time reading a Supreme Court decision called persnickety, and I think that's exactly how I would characterize what the immigration judge did here about the vast majority of these purported inconsistencies. They're either nonexistent or completely trivial. The other point that also needs to be stressed here is that we are talking about a man who, if you're to credit anything, went through tremendous trauma, not just himself but having his cousin killed because the officers thought that that was him, who fled, who had all these physical problems. We're talking about a man who was extremely vulnerable. And so for an immigration judge to start cross-examining him in a way that this court has condemned about these very matters would help explain why there might be some less-than-clear answers. I really want to go back to this cross-examination by the immigration judge, which casts into doubt every single thing he found and therefore everything the BIA found. I'm not sure how that helps you with this issue of the signatures at the bottom of the page and what happened before the immigration judge hearing even happened. That seems like it doesn't get you out of that problem. I will come back to that on my rebuttal. I also want to talk about the ineffective assistance of counsel, which could be viewed simply as a clearly erroneous finding not supported by substantial evidence. If you look at that asylum application, there are 18 date entries. 16 of the 18 say 01. It's undisputed that Tyler Kent, the earlier retained immigration attorney, was the one who filled that form out. So clearly this was a scrivener's error. Clearly that cannot be supported by the record. Are you trying to seek reopening? I was a little bit confused what you're doing with this ineffective assistance of counsel argument. Is it just a way to explain the date inconsistency, or are you actually seeking some sort of other relief because of it? Oh, I tried to raise it in the BIA, and they said there was no prejudice. I guess the question is by Judge Friedland, are you making it as a due process argument, essentially, in terms of being a denial of due process? Yes, an ineffective assistance of counsel claim raised in an immigration proceeding is not a Sixth Amendment issue. It's a due process issue. It clearly is prejudicial because it is the only substantial inconsistency in this case, and it is a result of ineffective assistance of counsel. Alternatively, the court could simply say it's clearly a scrivener's error, and therefore it's not something that can be held against Mr. Akam. He clearly told the asylum officer that it was in May that he fled, that the shop was shut. And so if we agree with you that it's just clearly a typo of some sort, this putting everything as January, then we don't need to worry about the ineffective assistance of counsel anymore? You could do it either way. Either way, as long as it's not going to be held against Mr. Akam in terms of how the court deems the BIA as having been based upon substantial evidence or not, and it's clearly erroneous finding. Okay, now we have you over your time, so I think I'd better ask you to stop now, and we'll give you two minutes for rebuttal after we hear from the government. Okay, thank you. Thank you. Good morning, Your Honors. Good morning. May it please the Court, my name is Joanna Bellacchino, and I represent the Attorney General. Very quickly, I just would like to thank you all because this is my first oral argument, and I'm very happy to be here with you for this. Welcome. Thank you for coming in person. Thank you. Your Honors, under 8 U.S.C. Section 1252, B, for capital B, the agency's findings are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. In Garland v. Ming Dai, the Supreme Court emphasized that this is a highly deferential standard. And so when you have two possible explanations for perceived inconsistencies or credibility issues, the tie generally goes to the agency. But in this case, there is no tie because the Board highlighted three major inconsistencies that are central to the petitioner's asylum claim. And as Judge Friedland pointed out, the biggest inconsistency in this case is that in his initial interview with the customs officer, he says that he affirmatively says that he was never harmed. And that changes when he gets to the asylum officer and to the immigration judge. And that is not only an inconsistency, it's a direct contradiction that enhances his entire asylum claim. And as Judge Bennett pointed out, if you read the full context of that transcript at page 225 to 226, he clearly understands that he's being asked about these groups that threaten him despite the fact that there's an intervening question about whether he himself has ever been in a political group. And so regardless of there being a noisy environment, he's unfamiliar with the officer's accent, the officer may be speaking too fast, and the immigration judge even acknowledged his claim that he didn't have an opportunity to see the record. The immigration judge was reasonable in finding that to not be true. In fact, as you all pointed out, the petitioner signed every single page of that interview, and so he clearly saw it. It can't be said that he didn't. Where is the finding of fact as to that? The administrative record on page 4 reflects, and I notice that you're dealing directly with whether Akeem was harmed in Cameroon. But the record reflects, I think, that as to the custom and border patrol officer speaking quickly and whether Akeem understood, and as to whether or not he did or did not review, the record does not reflect any finding of fact by the immigration judge with respect to that. There's a summary of the BIA essentially saying that's what occurred, but there is no record of there actually being a finding of fact on that. Well, respectfully, Your Honor, we would argue that, in that case, the board wasn't engaging in any improper fact. Well, do you agree that the record reflects there was no finding of fact by the immigration judge on that? Isn't that correct? I think, Your Honor, that the immigration judge, yes, he may not have explicitly said it. Well, that's right. I think, thank you, Ms. Aquino, the record is clear. There is absolutely no finding of fact on that question by the immigration judge. And then the BIA, it appears, then summarized that Akeem was able to review its contents and address any errors before signing it. That comes close to the BIA making a finding of fact, does it not? I would argue that it's not an improper fact finding, Your Honor. In fact, I think he was— Is it an inaccurate summary? No, Your Honor. I think he was—the Board of Immigration Appeals was pointing to the record evidence that supported the immigration judge's conclusion. I don't think that was improper fact finding. That's the reason I'm trying to be specific here. It's clear. There's no dispute, as you argue before this court, that the immigration judge did not make a finding of fact on that. I'm sorry, Your Honor. I'm just trying to make sure we're clear, for all of us here on the panel, that the record does clearly indicate that the immigration judge did not make a finding of fact as to that, as to whether he understood the contents. Not the matter of signing the bottom of a page, but in terms of whether he understood what the CBR officer said and whether he was speaking too quickly or not and whether he did or did not review. There were no specific findings of fact as to that. Again, that's correct, is it not, Ms. Aquino? Yes, that is correct. Counsel, I'm looking at page 8 of the IJ's oral decision. I think it's page 90 of the record. And the court says that there is a significant inconsistency between his oral testimony and what was stated at the border, right? Yes. And then on page 14, 96 of the record, the court says that the court notes that all of the foregoing inconsistencies are very significant. All of these go to the heart of the asylum claim. Are those findings of fact? No, Your Honor. I think there's just conclusion. He's doing the proper analysis. The immigration judge is doing the proper analysis that he needed to do. He's acknowledging the points that support both Mr. O'Connell's claim and undermine it. And he's considering all of these facts all together. And in the end, he concludes properly and reasonably that these all undermine the heart of his immigration. But I think your response to Judge Mark Benedict was that you agree they aren't findings of fact, though. Yes, Your Honor. I don't think they are. Thank you. I don't think it's a clear finding of fact. So could I ask, if we do think this is an inconsistency about what he said at the border, about whether he was physically harmed, and then what he said later, but we disagree with all of the other supposed inconsistencies, why shouldn't we at least remand for the agency to reconsider this credibility determination, given that most of the reasons were invalid? Well, Your Honor, I would disagree with the characterization that the other inconsistencies are invalid. But I think this one is absolutely, as you pointed out during the first argument, that this is the biggest inconsistency because it completely undermines the heart of his claim. He says that he was affirmatively says that he was never harmed. Well, let me ask you this, if I can, to follow up on Judge Freeland's question, that I assume you're not really placing much emphasis upon the alleged inconsistency as to a chest injury. Because it's hard for me to understand how anyone can make a finding as to a chest injury when the administrative record reflects on page 205 specifically that he, Akeem, said that when they were putting me to put inside the car, I told they were hitting me. They hit my chest. And the medical records clearly reflect in this case that there was an injury to his chest or trunk area. Right. But yet there's a contention that that's one of the five early inconsistencies in terms of when he responded, he was beaten on the soles of his feet, I specifically and nowhere else, that that's an inconsistency. You're not standing by that, I gather, here today. Not the trunk or the chest injury, Your Honor. I think the biggest inconsistency with his physical injuries is the soles of the feet. The medical report completely leaves out feet in the list of injuries. And he's very clear when he's asked, when he says under the legs, I was beaten under the legs, the immigration judge stops him and says, what do you mean by under the legs? I mean soles of my feet. He points to the soles of his feet. He's never said that he's ever been harmed in anywhere else other than the soles of his feet and right under his left eye. And it's reasonable for an immigration judge to expect a medical doctor to list that injury in a medical report. I mean, the medical doctor was apparently very willing to write a medical report for this purpose that supports, you know, like he says, he can't make a finding that he sustained those injuries through beatings. That's not a medical diagnosis that a doctor can say, but he can say through blunt force trauma. And he could say there were scars on his feet. It's odd for him to say just legs when the entire time Mr. O'Connor was saying I had scars to my feet, I was he essentially saying he was tortured through beating under his feet. And yet the medical report is completely void of any mention of that. Well, Mr. Aquino, I think you probably should be getting a chance to respond to Mr. Newton's comment about the word persnickety because I'm hard pressed to understand how that's not persnickety. When when when one of the five contentions of an inconsistency speaking up on Judge Freeland's point is a matter of no chest injury. How can this panel possibly conclude that there is an inconsistency with respect to a chest injury when the medical records reflect a chest injury and he makes reference to it in another part of the of the record? Is that not persnickety to then say that's inconsistent because he didn't mention the chest injury when he was asked what parts of the body were beaten? He his response was apparently the chest injury wasn't from from being beaten. It was from when he was put into the to the to the back of the car. And that's how he interpreted it. But how is that an inconsistency? I mean, your honor, that might be persnickety. Right. But it's not it's not the board. It's not what the board relied on and what the board relied on. And I think what the immigration judge primarily relied on is the fact that the the the main injury that he kept claiming was that he was getting beaten under the soles of his feet. And it's odd that if that was the main injury, the main form of torture that he suffered through his detention, that that's never mentioned in the medical report. The doctor is able to mention all sorts of other injuries six days after all of this happened. And yet that is the one that's missing. So maybe the the the chest injury may not necessarily be the biggest portion. It doesn't necessarily mean that there isn't an inconsistency about other physical injuries. And I see your honors that my time is almost up. If I could just wrap up your honor. I would emphasize again that this is a record where even if there are multiple plausible explanations for the inconsistencies, for any perceived credibility issues, the standard of review here says that deference goes to the fact finder. And so we would argue that the petition for review should be denied. Thank you very much. Thank you. Thank you, counsel. We'll give you two minutes for rebuttal. I found the portion of the record I'm talking about. So if the court looks at the page 185 of the certified administrative record, which is page 60 internally of the transcript of the asylum hearing, what Mr. Combs specifically said was he didn't show me what he wrote, obviously about what Mr. Combs was supposedly saying. So we should interpret that as meaning that the asylum officer had him sign this before there was anything written on it. The asylum officer is not the one who had him sign it. It was the border. I'm sorry. I used the wrong term so that we should assume that the border agent showed him a report with nothing written on it and had him sign it and then wrote it in afterward. No, that's not what I'm saying. If you look at what the BIA said, it said we know that the CPB sworn statement bears the respondent's signature at the bottom of each page, which contradicts his testimony that the officer did not show him the statement. It is common knowledge in our society, whether it's a real estate closing or any other kind of thing, where people often are just said, sign here, sign here, initial here, initial here, sign here, sign here. There is no testimony from an officer that he showed him. Mr. Combs testified he did not show him what he had written, as opposed to there's nothing in the record about whether he signed the bottom or not. As I pointed out, though, the final page is the only page where Mr. Combs certifies he read what is in the document. That's an important fact that can't be ignored. So if he was just signing, signing, signing, he probably didn't read that either, right? I mean, why would we think he read that and not the other pages? Well, it doesn't matter whether he read the last one or not. The point is he didn't certify he had read the other ones that the signature was put at the bottom of. We have a border patrol agent who may just be trying to cover his bases by having everybody they interview sign every page. That does not mean he went over the content of it and made sure Mr. Combs understood it. I think we've used up your time, so thank you both sides for the helpful arguments. This case is submitted.
judges: FRIEDLAND, BENNETT, Bennett